J-S26019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LINDA G. GAUN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| H. KENNETH GAUN | : | |
| | : | |
| Appellant | : | No. 1464 MDA 2023 |

Appeal from the Decree Entered September 25, 2023
In the Court of Common Pleas of Northumberland County Civil Division at
No(s): CV-2016-02177

BEFORE: PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                **FILED: OCTOBER 7, 2024**

Appellant, H. Kenneth Gaun (Husband), appeals from the divorce decree entered on September 25, 2023, challenging the trial court's equitable distribution of a marital estate. We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [Husband and Linda G. Gaun (Wife)] were married September 14, 1968 in Bucks County, Pennsylvania, and resided in the marital residence in Northumberland County in excess of six months prior to separation.
>
> [Wife] filed for divorce on December 14, 2016 [seeking] claims for alimony, alimony *pendente lite*, counsel fees, costs and expenses, and equitable distribution. [Husband] filed a counter-claim [on] January 26, 2017, claiming indignities. On the same day that [Husband] filed his counterclaim, he filed a petition for special relief for exclusive possession of the marital home[.] An *ex parte* hearing held the following day awarded [Husband] exclusive possession of the marital residence, and all marital property located thereon. The court further ordered that each [spouse] maintain the other as a beneficiary on all accounts or investments,

neither party dissipate any investment accounts, retirement accounts, pensions, 401(k)s, and/or life insurance. Further, neither party was allowed to dissipate any other property, such as vehicles, household furnishings,[and/or] guns [] without written agreement from the other party. This order was to remain in effect until further order of court or the parties execute[d] a final marriage settlement agreement.

The initial Master's hearing was held [on] November 20, 2018 [wherein] testimony was given [by four witnesses]. Further hearings were held [on] February 22, 201[9], March 25, 2019, and May 8, 2019. The Master filed her report on September 16, 2019.

[Husband] filed exceptions to the Master's report on October 3, 2019 [claiming 27] errors in the Master's report. [Wife] filed a response to [Husband's] exception[s] with [eight of her own] counter exceptions on October 23, 2019[.] Initially, both parties objected to the Master's distribution of 55% to [Husband] and 45% to [Wife]. [Wife] argued that she should have had a 50/50 distribution of the marital property and [Husband] maintained that he should have received a 60/40 split.

The [trial] court reviewed the file and the Master's report and recommendation. After review, the trial court affirmed the Master's report [and entered a divorce decree] on September 25, 2023. [Husband] filed his notice of appeal on October 20, 2023, and [a timely] concise statement of [errors] complained of on appeal [pursuant to Pa.R.A.P. 1925(b)] on November 14, 2023. [The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on February 5, 2024.]

Trial Court Opinion, 2/5/2024, at *1-2 (unpaginated) (superfluous capitalization omitted).

On appeal, Husband presents the following issue for our review:

Did the [] trial court abuse its discretion by a misapplication of the law or failure to follow proper legal procedure in its decision [] by accepting and adopting the Master's report and recommendation [] and denying [Husband's] exceptions thereto, relative to equitable distribution of marital property where:

- 2 -

a. The trial court upheld the Master's decision awarding only 55% of the value of marital assets to Husband given the factors of the instant case[.]

b. The trial court upheld the Master's decisions failing to award Husband his entire UPS pension, and awarding Husband the parties' cemetery plots at current market value[.]

c. The trial court upheld the Master's decision failing to properly credit Husband and debit Wife for payment of debts Husband paid alone after separation of the parties;

d. The trial court upheld the Master's decision awarding a timber value to Wife[;]

e. The trial court upheld the Master's decision awarding Wife a fair rental value award relative to the marital real property, and in subsequently failing to properly credit Husband with his expenditures and upkeep relative to the same;[1]

Husband's Brief at 5-6.[2]

Generally, Husband argues that the trial court erred when it failed to award him 60% (instead of 55%) of the marital estate. *Id.* at 49-55. He claims that the evidence presented showed that he worked "a ferocious amount of hours during his lifetime" often holding multiple jobs while "he maintained his job at UPS for 30 years" so that he and Wife could later enjoy

_____

[1] We have reordered the sub-parts of Husband's issue for ease of discussion.

[2] In response, Wife states:

> [she] did not cross-appeal because there [was] no[] abuse of discretion or misapplication of law. The [trial] court's judgment in the scheme of the distribution can be considered to work economic justice between the parties. Just being unhappy with the trial court's decision is not a basis for appeal.

Wife's Brief at 5.

retirement. *Id.* at 50-51. Husband argues that "[i]n stark contrast," Wife "never obtained much in the way of pension or retirement benefits, as she could not remain employed at the same place for any great length of time." *Id.* at 51. Husband further asserts that Wife "walked away from the marital home and the bills associated therewith," leaving Husband with debt as a result of his sole maintenance of the marital residence, taxes and insurance, medical bills for the parties' ill dogs, and monthly payments for a recreational vehicle. *Id*. at 52, 62-64. Overall, Husband maintains:

> In short, while Wife simply enjoyed the lifestyle that was provided to her by Husband, Husband spent his life planning for the future, wishing to enjoy his later years in retirement, and finally being able to slow down. Husband's extra work paid for a vast majority of the parties' personal property and Wife's trips, visits to the beauty salon, elective [] surgery and the like, whereas his main employment also resulted in the large accumulation of retirement benefits now looked to be equitably and also evenly divided by the lower court. Husband deserves to be rewarded for his hard work and smart investments, as well as accumulation of personal property with value[.] Wife has already been rewarded many times over. Therefore, it is only equitable for this Court to award Husband a much larger disproportionate share of the marital estate than Wife, at a minimum of 60% of the marital estate.

*Id.* at 54-55.

More specifically, Husband also argues that the trial court abused its discretion in valuing and allocating particular items of personal property for equitable distribution. Husband asserts that "it is most equitable for the Court to award Husband the entirety of his UPS pension and compensate Wife with other marital assets after also reducing Wife's share by an equitable split of the debts solely maintained by Husband following the separation of the parties

as argued previously." ***Id.*** at 60. Husband argues that the trial court failed to properly value and allocate the parties' pre-paid, double burial plot and crypt. ***Id.*** at 60-61; ***see also id.*** at 45 ("Husband testified that regarding the cemetery plots, he wants one of them and Wife should get the other one to do with it what she wants."). He challenges the trial court's failure to credit him for the debt incurred following separation as detailed above. ***Id.*** at 62-64. Husband challenges the trial court's finding that the value of timber on the marital property totaled $13,000.00. ***Id.*** at 72-76.

Finally, Husband argues that the trial court abused its discretion by awarding Wife her share of the fair rental value of the marital property following separation when he was in sole possession. ***Id.*** at 64-72. Husband claims that: 1) "no one would utilize the subject property as a rental property," 2) "neither party would have had anywhere to store their voluminous items of" of personal property, 3) Wife surreptitiously took personal property from the marital residence with "unclean hands" and "her obvious misconduct result[ed] in her exclusion from the marital property by the [trial c]ourt," and 4) "when Wife elected to vacate the residence, she left all the bills and upkeep to Husband to maintain." ***Id.*** at 67-72.

We adhere to the following legal precepts:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court

will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*　　　*　　　*

The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

*Childress v. Bogosian*, 12 A.3d 448, 455–456 (Pa. Super. 2011) (internal citations, quotations and original brackets omitted).

Moreover, this Court has recognized:

[t]he methods by which divorcing parties effectuate economic justice are familiar and well settled. The process of equitable distribution is an exercise in marshalling, valuing and dividing the marital pot in a fair manner. Not every piece of property can or should be split in half. Sometimes one spouse is entitled to more property than is the other. In some instances, the sale of property

must occur so that each spouse can receive his or her rightful amount. In other instances, a spouse may be allocated a specific item of property and the other spouse will receive cash or a credit for his or her share in that same item.

***Moran v. Moran***, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citation omitted).

Moreover, regarding fair rental value, this Court has previously determined:

> it is within the discretion of the trial court to grant rental value as a part of equitable distribution. The award of rental value is within the sound discretion of the trial court. The basis of the award of rental value is that the party out of possession of jointly owned property (generally the party that has moved out of the formal marital residence) is entitled to compensation for her/his interest in the property.
>
> Generally, parties have an equal one-half interest in the marital property, and thus the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home. This Court has discussed the analysis for deciding whether to award rental credit:
>
>> First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property.... Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is so because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of her/his ownership interest which is generally one-half. Finally, we note that whether the rental credit is

due and the amount thereof is within the sound discretion of the court of common pleas.

***Lee v. Lee***, 978 A.2d 380, 385–386 (Pa. Super. 2009) (internal citations and quotations omitted).

Upon review of the certified record, the parties' appellate briefs, applicable law, the Master's report, and the trial court's opinion, we discern no abuse of discretion. Here, the trial court determined that Husband was entitled to 55% of his pension with UPS, after noting that at the time he retired, "he made an irrevocable spousal survivor election that [] upon his death[, Wife] will receive 50% of the monthly amount that [Husband] receives." Trial Court Opinion, 2/5/2024, at *6 (unpaginated). As such, because the spousal survival election was irrevocable, the trial court determined that Husband should receive a higher percentage of his pension while he was still alive. ***Id.*** at *7. Regarding timber, the trial court recognized that there was no dispute that there were two instances of prior timbering on the marital property and that there was additional timber for future harvest. ***Id.*** at 4. Neither party presented expert testimony. ***Id.*** Wife testified that the first harvest garnered between $10,000.00 and $20,000.00; Husband testified that second harvest yielded $13,000.00 to $14,000.00. ***Id.*** The Master set the value of the additional timber at $13,000.00 and the trial court discerned no abuse of discretion. We agree. ***See Childress***, **supra** ("[T]he trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties.").

Regarding fair rental value and the debts allegedly accrued by Husband after separation, the trial court determined:

[Husband] contested the Master's assignment of a fair market value to the property. [Husband] presented an argument that [Wife] was not entitled to a fair market rental value due to "unclean hands." The argument was that [Husband] filed for and was granted exclusive possession of the marital residence. The Master addressed this argument in her report finding that [Wife's] removal of any personal property from the residence was nominal given the size of the marital estate. The [trial c]ourt agreed with the Master's finding that there [was] an equitable defense to the claim for fair rental value.

\* \* \*

The Master correctly set forth the procedure for calculating the fair market rental value.

[Wife] left the marital residence around November 2016 and [Husband] had exclusive possession since 2017. The Master found that [Wife] was entitled to fair market rental value for 34 months. The range for the rental value was between [$1,300.00 and $2,700.00 per month] making the median value [$1,756.00 per month].

The Master found that [Husband's] claim for credit for [Wife's] portion of the costs associated with maintaining the marital residence to be valid and [that he was entitled to credits of $10,548.82 for property taxes and $2,554.00 for homeowners insurance.] The Master calculated that [Wife was entitled to $23,300.59 for fair rental value[3]] and the [trial] court [found] the calculations to be correct.

Trial Court Opinion, 2/5/2024, at *5-6 (unpaginated).

_____

[3] By our own calculations, $1,756.00 per month for 34 months totals $59,704.00. Subtracting $13,102.82 for property taxes and homeowner's insurance totals $46,601.18, divided in half for Wife's share, totals $23,300.59.

- 9 -

We discern no abuse of discretion. Here, the trial court considered the distribution scheme as a whole in order to effectuate economic justice between the parties. The trial court properly exercised its discretion in valuing and apportioning the parties' individual assets and relied on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. In fact, Husband does not really contest the actual valuations, but instead argues that he is entitled to a larger share of the marital estate because he worked outside the home more than Wife did during the marriage. *See* Husband's Brief at 44 ("Wife did not put in nearly the same amount of work that he did in order to obtain the marital assets they had, and therefore he did not believe she should retain an equal amount of those assets, rather, he should get a substantial portion of them."). Similarly, Husband does not facially challenge the trial court's calculation of fair rental value owed Wife. Instead, he argues that renting the marital home was unfeasible and that Wife was not entitled to fair rental value because she chose to leave the marital residence and then took personal property from the marital residence without authority or permission and did so with "unclean hands." The trial court noted that Husband was entitled to credit for property taxes and homeowner's insurance for debts he incurred on the marital residence following separation as required. Accordingly, we discern no abuse of discretion. The trial court also properly determined that Wife was entitled to fair rental value for jointly held property, limited to the time she was dispossessed and when Husband was in actual possession of the property, minus the payments Husband made

to maintain the property on behalf of Wife, the dispossessed spouse. Upon review, we discern no abuse of discretion or error of law regarding equitable distribution. Accordingly, there is no merit to Husband's appellate claims, and we affirm the trial court's decree and decision.[4]

Decree affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/7/2024

_____

[4]  Finally, we note that the trial court failed to address Husband's contention regarding the parties' cemetery plots in its Rule 1925(a) opinion. Upon further review, the Master determined that "[b]oth cemetery plots are distributed to Husband, the one who testified he 'planned for his future'" because "[i]t served the most economic justice to award both plots to one party for them to keep and either sell or keep with the additional plot [] as [Husband] may find another spouse or relative." Master's Report, 9/16/2019, at 20; *see also id.* at 6 ("Double depth crypts mean the grave sites are on top of each other and this master finds that neither spouse should be required to be buried so close to their ex-spouse. The plots are virtually worthless by themselves to sell individually. It serves the most economic justice to award both plots to one party to keep[.]"). We agree with this assessment and discern no abuse of discretion. *See Moran*, **supra** ("Not every piece of property can or should be split in half.").